UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARON MABRY AND TRACEY BOWE,<br><br>       Plaintiffs,<br><br>v.<br><br>BRIAN FISCHER, et al.,<br><br>       Defendants. | 11 Civ. 2887 (LBS)<br><br>**MEMORANDUM**<br>**& ORDER** |

SAND, J.

Plaintiffs Sharon Mabry ("Mabry") and Tracey Bowe ("Bowe"), committed to the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), bring this action pursuant to 42 U.S.C. § 1983 alleging that unsafe conditions of confinement are putting their health at risk in violation of the 5th, 8th and 14th Amendments to the United States Constitution. Named as Defendants are DOCCS and its Commissioner, Brian Fischer, Superintendent Andrea B. Hester, Health Service Director Barbara Griffith and Taconic Correctional Facility (the "State Defendants"); the Town of Bedford ("Bedford"); Peckham Materials Corporation ("Peckham"); and Asphalt Sealing Specialist Company ("Asphalt Sealing"). Before this Court are motions to dismiss filed by the State Defendants, Bedford and Peckham.[1]

## I. Background[2]

Plaintiffs Mabry and Bowe have been incarcerated at Taconic since June 17, 2010 and June 6, 2007, respectively. First Amended Compl. ("FAC") ¶ II.D. According to Plaintiffs, they are routinely exposed to unsafe levels of environmental tobacco smoke, mold, blood on the

---

[1] There is no evidence in the record that Asphalt Sealing was ever served with process, and it has not appeared in this matter.
[2] The facts stated in this section are as alleged by Plaintiffs in the Amended Complaint.

toilets and "vermin," including insects and rodents. *Id.* Plaintiffs further assert that Peckham and Asphalt Sealing, two nearby commercial facilities, emit excessive noise and "toxic fumes" of "benzene" and other "dangerous carcinogens," causing Plaintiffs to experience chest pains, headaches, difficulty breathing, coughing, wheezing, reflux, stomach problems, itchy and swollen eyes and skin irritations. Mabry asserts that her health, already fragile from preexisting conditions, is being compromised further by these conditions. *Id.*

Plaintiffs filed grievances and wrote letters regarding these conditions, but prison officials either denied their requests for relief or failed to respond altogether. In response to letters Mabry sent to Defendant Fischer on June 26 and October 10, 2011, she received letters from Associate Commissioner Theresa Knapp-David and DOCCS Chief Medical Officer, Dr. Koenigsmann, both of whom directed Plaintiff to discuss her concerns with facility personnel. On November 17, 2010, Bowe wrote to Commissioner Fischer but received no response. Attached to the Complaint are copies of Plaintiffs' communications with prison officials. Am. Compl., attachments. Defendants assert, and Plaintiffs do not dispute, that Bowe did not grieve the vermin issue. State Defs.' Mot. Dismiss at 6-7.

Plaintiffs also wrote to Bedford and Peckham but received no response. FAC ¶ II.D. Plaintiffs assert that Bedford and Peckham were on notice about the pollution and that their failure to respond or take action constituted negligence and deliberate indifference to Plaintiffs' health and safety. According to Plaintiffs, Bedford is liable for their injuries for failing to prevent the emissions or to enforce environmental regulations and for having a policy of allowing toxic emissions to be released into the air, and Peckham for creating the hazardous conditions that are adversely affecting Plaintiffs' health. Plaintiffs seek monetary damages and injunctive relief, including improved conditions or transfers to another correctional facility. FAC ¶ V.

The State Defendants move to dismiss all claims against Commissioner Fischer and Bowe's vermin claim. Bedford and Peckham move to dismiss all claims against them. Only Mabry filed opposition papers. Bedford has asked the Court to dismiss Bowe's claims for failing to oppose its motion. In light of Plaintiffs' *pro se* status the Court declines to do so at this time. Going forward, however, Bowe must sign Mabry's responsive pleadings or submit her own or risk dismissal from the action for failure to prosecute.[3]

## II. Discussion

### A. <u>Standard of Review</u>

On a motion to dismiss, a court reviewing a complaint will consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (internal quotation omitted). Ultimately, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "[A] simple declaration that defendant's conduct violated the ultimate legal standard at issue . . . does not suffice." *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001).

When reviewing a *pro se* complaint for failure to state a claim, a court is obligated to employ less rigorous standards than if the complaint was drafted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

---

[3] Plaintiffs purport to bring this Complaint on behalf of those "similarly situated." Non-attorneys cannot represent others or prosecute class actions. *See* 28 U.S.C. § 1654; *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). Any claims Plaintiffs raise on behalf of individuals who are not parties to this action are dismissed.

formal pleadings drafted by lawyers.") (internal quotations and citations omitted). But a *pro se* plaintiff must still "identif[y] the particular events giving rise to her claim" so as to give defendants "fair notice of her claim and the grounds upon which it rests." *Boykin v. KeyCorp.*, 521 F.3d 202, 214-15 (2d Cir. 2008) (citation omitted).

In reviewing a complaint, a court is not limited to the four corners of the complaint; a court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). This includes the "full text of documents partially quoted in [the] complaint." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996)).

## B. The Merits

### 1. The State

The State Defendants seek to dismiss (1) all claims against Commissioner Fischer for lack of personal involvement and (2) Bowe's vermin claim for lack of administrative exhaustion.

#### a. Personal Involvement

Plaintiffs claim that Defendant Fischer, in his capacity as DOCCS Commissioner, is liable for their injuries. To plead a § 1983 claim, a plaintiff must allege facts showing that each defendant was personally involved in the alleged violation of constitutional rights "through the official's own individual actions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). "[T]he doctrine of respondeat superior . . . does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *Hayut v. State Univ. of N.Y.*, 352 F.3d

733, 753 (2d Cir. 2003); *see also Hemmings v. Gorczyk,* 134 F.3d 104, 109 n.4 (2d Cir. 1998). Additionally, "[t]he bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir. 1995).

In this case, the only allegations against Fischer are that on two occasions he referred letters of complaint to other DOCCS officials and once he did not respond at all. The receipt of letters or grievances, by itself, does not amount to personal involvement. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir. 1997) (commissioner had no personal involvement when plaintiff wrote him two letters, one an appeal the Commissioner had referred to the prison superintendent for decision); *Mateo v. Fischer,* 682 F. Supp. 2d 423 (S.D.N.Y. 2010); *Manswell v. U.S.,* 09 Civ. 4102, 2010 WL 3219156, at *5 (S.D.N.Y. Aug. 12, 2010); *Higgins v. Artuz,* 94 Civ. 4810, 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Nor is it enough that a supervisor forwarded a complaint or grievance to another official for handling. *Ramos v. Artuz,* 00 Civ. 0149, 2001 WL 840131, at *8 (S.D.N.Y. July 25, 2001) (superintendent lacked personal involvement where he forwarded inmate's complaint letters to appropriate subordinates). This is because DOCCS commissioners and prison superintendents receive large numbers of letters from inmates, and they "delegate subordinates to handle them." *Walker v. Pataro,* 99 Civ. 4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002). Plaintiffs' allegations regarding Fischer's conduct do not allege sufficient personal involvement for § 1983 purposes.

### b. Exhaustion

The State Defendants allege that Bowe did not grieve the vermin issue. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C.1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The issue of nonexhaustion should "be resolved as early as possible by the court." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Complaints that were not filed as formal grievances cannot satisfy the exhaustion requirement of § 1997e(a). *See Scott v. Gardner*, 287 F. Supp. 2d 477, 488-489 (S.D.N.Y. 2003) ("Letters of complaint, regardless of the addressee, are not part of the grievance process and do not satisfy the exhaustion requirement."); *Hemphill v. New York*, 198 F. Supp. 2d 546, 549 (S.D.N.Y. 2002) ("The remedies afforded an aggrieved prisoner are clear, and prisoners have no authority or ability to invent their own grievance procedures."); *Beatty v. Goord*, 210 F. Supp. 2d 250, 255-56 (S.D.N.Y. 2000) ( "Permitting Plaintiff to bypass the Inmate Grievance Program, as he chooses, would undermine the important objective of creating an efficient and effective prison grievance mechanism."). Plaintiffs have not disputed that Bowe failed to exhaust her administrative remedies under the PLRA with respect to the vermin claim, and the Court finds that it is unexhausted.

### 2. Bedford

Plaintiffs allege that Bedford failed to prevent the hazardous conditions or enforce environmental regulations, reflecting a municipal policy that permits the release of toxic emissions and noise. Bedford moves to dismiss the action against it on the grounds that it did not violate Plaintiffs' constitutional rights and owed no duty to protect them.

To state a § 1983 claim, Plaintiffs must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). To hold a municipality liable under § 1983 for acts by its employees, Plaintiffs are required to allege that its employees inflicted a constitutional harm, *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), and that they did so pursuant to an official policy, custom or practice. *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). In other words, Plaintiffs must plead that "the municipality was the moving force behind the alleged injury." *Id.* at 37 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

In their Amended Complaint, Plaintiffs invoke the Fifth, Eighth and Fourteenth Amendments. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Bedford has no affiliation with the prison, and Plaintiffs are not in its custody. Bedford is, therefore, not responsible for the conditions of Plaintiffs' confinement and is not a proper defendant for an Eighth Amendment claim. What arguably remains, therefore, is Plaintiffs' due process claims.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." Generally, a State's

failure to protect an individual against private violence does not constitute a violation of the due process clause because that clause imposes no duty on the State to provide protection. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). Absent the existence of a special relationship or some conduct on the part of the municipality that creates a causal relationship between the municipality and the alleged injury, a state official's failure to protect an individual from a private party's tortious conduct does not state a § 1983 claim. *Ying Jing Gan v. City of New York*, 996 F.2d at 533; *see also Parratt v. Taylor*, 451 U.S. 527, 544 (1981) (concluding that the drafters of the Fourteenth Amendment did not intend it to be "'a font of tort law to be superimposed upon whatever systems may already be administered by the States'") (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).

Moreover, negligently inflicted harm "is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (only "the most egregious official conduct can be said to be arbitrary in the constitutional sense"); *Matican v. City of New York*, 524 F.3d 151, 158 (2d Cir. 2008); *Lombardi v. Whitman*, 485 F.3d 73, 75 (2d Cir. 2007). Only an affirmative act can amount to a violation of substantive due process, because the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195.

Plaintiffs assert that Bedford violated their constitutional rights by failing to protect them from pollution emanating from nearby plants, and they allege that Bedford's failure to rescind Peckham's operating permit constituted a municipal policy of non-enforcement. According to Plaintiffs, they wrote letters to Bedford and they received no response and no action was taken. Any allegations that Bedford has an affirmative duty to protect Plaintiffs or to respond to their complaints must fail, however, because Bedford has no special relationship with the Plaintiffs

that would give rise to such a duty. In addition, Plaintiffs fail to allege conduct that created a causal relationship between the town and their alleged injury or that the town was the moving force behind the alleged injury. At most, the facts alleged against Bedford could arguably give rise to a negligence claim, which is insufficient to state a constitutional violation.

With respect to Plaintiffs' assertions that Bedford is failing to enforce environmental laws, such laws do not "impose an obligation upon the government to investigate and remediate every possible violation" of their provisions. *Leland v. Moran*, 235 F. Supp. 2d 153, 168 (N.D.N.Y. 2002); *Rosendale v. Iuliano*, 99 Civ. 11701, 2002 WL 215656 (S.D.N.Y. Feb. 13, 2002) (government officials are given broad discretion whether to undertake enforcement actions). *Cf. Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994) (courts have questioned whether "a property owner ever could have a protected interest in the enforcement of" zoning laws against an adjoining property). Plaintiffs have not alleged facts suggesting that Bedford violated their constitutional rights, was the "moving force" behind any such violations or that they were injured by a municipal policy.

### 3. Peckham

Peckham asserts that it did not act under color of state law and did not violate Plaintiffs' rights. Section 1983 liability requires an allegation of a constitutional violation by a state actor. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Nwanze v. Philip Morris Inc., et al.*, 100 F. Supp. 2d 215 (S.D.N.Y. 2000) (as a general rule, only governmental actors may be held responsible for constitutional violations). The defendant in a § 1983 action must "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kia P. v. McIntyre*, 235 F.3d 749, 755 (2d Cir. 2000) (quoting *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997)). "Actions by a private party are deemed state

action if 'there is a sufficiently close nexus between the State and the challenged action' that the actions by the private parties 'may be fairly treated as that of the State itself.'" *Chan v. City of New York*, 1 F.3d 96, 106 (2d Cir. 1993) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). The "mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson*, 419 U.S. at 350; *Cranley v. Nat'l Life Ins. Co. of Vermont*, 318 F.3d 105, 112 (2d Cir. 2003) (citing *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 543-44 (1987)) ("A finding of state action may not be premised solely on the private entity's creation, funding, licensing, or regulation by the government.").

Granting Plaintiffs the special solicitude due *pro se* litigants, they nevertheless fail to state a claim against Peckham. The Complaint contains no facts that would allow this Court to reasonably infer that Peckham, a private entity, acted under color of state law. The only allegation in the Complaint is that Peckham operates under state-issued permits. Such an allegation is insufficient to establish that Peckham is "clothed with the authority of state law." *Kia P.*, 235 F.3d at 755. For this reason, the Court holds that Plaintiffs have failed to allege the existence of state action in connection with their claims against Peckham.

### 4. Supplemental Jurisdiction

The Court declines to exercise its supplemental jurisdiction over any potential state law claims against Peckham or Bedford because Plaintiffs have failed to allege any viable federal claims against them. *See* 28 U.S.C. § 1367 (2006); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

### III. Conclusion

Defendants' motions to dismiss are granted. Defendant Fischer is dismissed from the action and Bowe's vermin claim is dismissed for lack of exhaustion. All claims against Bedford and Peckham are dismissed. Discovery is to proceed consistent with Magistrate Judge Ellis's November 18, 2011 Order.

SO ORDERED.

Dated: December 5, 2011
       New York, New York

_____
U.S.D.J.