UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

SHARON MABRY et al.,                                    :
                                                        :
                        Plaintiffs,                     :
                                                        :
            -v-                                         :
                                                        :
ANDREA HESTER et al.,                                   :
                                                        :
                        Defendants.                     :

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/08/2014

11 Civ. 2887 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiffs Tracey Bowe and Sharon Mabry, state prisoners proceeding *pro se*, bring this

action pursuant to Title 42, United States Code, Section 1983 alleging Eighth Amendment

violations during their confinement by the New York Department of Corrections and Community

Services ("DOCCS"). Defendants Andrea Hester, Deputy Superintendent for Administration of

the Taconic Correctional Facility ("Taconic"), and Dr. Barbara Griffith, the DOCCS Regional

Medical Director responsible for both Taconic and Bedford Hills Correctional Facility ("Bedford

Hills"), move for summary judgment as to all remaining claims pursuant to Rule 56 of the

Federal Rules of Civil Procedure. (Docket No. 114). For the reasons that follow, Defendants'

motion is GRANTED, and the Second Amended Complaint is DISMISSED.

## BACKGROUND

Bowe and Mabry have been incarcerated at Taconic since June 2007 and June 2010,

respectively. (Defs.' Rule 56.1 Stmt. (Docket No. 116) ¶¶ 1-2). Both were previously

incarcerated at Bedford Hills, which is located less than one mile from Taconic in Westchester

County, New York. (*Id.*). They filed the instant lawsuit in April 2011, alleging various claims

against Hester, Griffith, and other Defendants. (Docket Nos. 3, 9). In opinions entered on

December 5, 2011, and July 10, 2012, the Honorable Leonard B. Sand — to whom this case was previously assigned — dismissed many of Plaintiffs' claims, including all claims against Defendants other than Hester and Griffith.  (Docket Nos. 63, 103).  Plaintiffs' remaining claims against Hester and Griffith allege Eighth Amendment violations for unconstitutional conditions of confinement.  In particular, Plaintiffs claim that they were exposed to toxic fumes from a nearby asphalt plant, which have "contributed to plaintiffs['] further respiratory problems and other ailments."  (Pls.' Mem. Law Opp'n. Defs.' Mot. Summ. J. (Docket No. 132, Ex. A) ("Pls.' Mem.") 2).  Plaintiffs contend as well that Defendants violated their rights by exposing them to unsanitary conditions in Taconic, including the presence of pests and vermin, moldy bathrooms, bloody toilet seats, and secondhand smoke.  (*Id.*).[1]

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine if the "evidence

---

[1]      After Defendants' motion for summary judgment was fully briefed, Plaintiffs' requested either to file a sur-reply or to strike their initial filing in favor of a new memorandum of law. (Docket Nos. 129, 131, 134).  The Court denied the request (and a motion for reconsideration) on the ground that allowing Plaintiffs to file another memorandum would either prejudice Defendants or require them to prepare new briefs, causing delay.  (Docket No. 136; *see also* Docket Nos. 130, 133).  Plaintiffs appealed the Court's rulings (Docket No. 135), and that appeal appears to still be pending.  The Court, however, retains jurisdiction because Plaintiffs' appeal is plainly defective, as it is from non-final orders and has not been certified for interlocutory appeal.  *See, e.g.*, *United States v. Rodgers*, 101 F.3d 247, 252 (2d Cir. 1996) (deeming a notice of appeal from a non-final order as "premature" and a "nullity," and holding that the notice of appeal did not divest the district court of jurisdiction); *Gortat v. Capala Bros., Inc.*, 07 Civ. 3629 (ILG), 2008 WL 5273960, at *1 (E.D.N.Y. Dec. 18, 2008) ("An exception . . . [to the general rule that an appeal deprives a district court of jurisdiction] applies where it is clear that the appeal is defective, for example, because the order appealed from is not final and has not been certified for an interlocutory appeal.").

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56-57 (2d Cir. 2012).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In cases such as this one, in which the non-movant bears the ultimate burden of proof, "the movant may point to evidence that negates its opponent's claims or . . . identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex*, 477 U.S. at 323).

To that end, the Court must construe all evidence in the light most favorable to the non-movant, *see LaBounty v. Coughlin*, 137 F.3d 68, 71 (2d Cir. 1998) (citing *Anderson*, 477 U.S. at 247-48), which requires "drawing all reasonable inferences in [the non-movant's] favor," *Nicholas v. Miller*, 189 F.3d 191, 192 (2d Cir. 1999) (per curiam) (internal quotation marks omitted).  To defeat a summary judgment motion, the non-movant must proffer more than a "scintilla of evidence" for her version of events, *Anderson*, 477 U.S. at 252, and raise more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When a summary judgment motion is brought against a *pro se* litigant, the Court must afford the non-movant with "special solicitude" in the construction of pleadings and motions and in the enforcement of procedural rules.  *See Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010) ("[I]n light of the particular difficulties presented by a motion for summary judgment . . . a district court errs by failing to advise a *pro se* litigant of the nature of such a motion and the consequences of failing to respond to it properly.").  That special solicitude is not unlimited,

however, and does not "relieve [a] plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).  Nor is "the duty to liberally construe a plaintiff's [filing] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## DISCUSSION

It is well established that "the Constitution does not require 'comfortable' prison conditions." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  Thus, to establish that the conditions of confinement rise to the level of violating the Eighth Amendment, an inmate must show "that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." *Id.* (alteration in original) (internal quotation marks omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To meet the first requirement of that test, a plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125.  To satisfy the second requirement, "the plaintiff must show that the defendant acted with more than mere negligence.  To constitute deliberate indifference, [t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Id.* (alteration in original) (internal quotation marks and citations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

4

In this case, Plaintiffs have failed to adduce sufficient evidence to create a triable issue on either requirement of the test.  Indeed, Plaintiffs' principal claims — relating to their alleged exposure to toxic fumes from the nearby asphalt plant — fail for any of three reasons.  As an initial matter, there is no admissible evidence tending to show that the asphalt plant even emitted toxic fumes at all.  Plaintiffs' primary evidence on this score is handwritten logs that they purportedly kept for the period from January 2010 to June 2013.  (*See* Decls. of Sharon Mabry and Tracey Bowe (Docket No. 132, Ex. B) ("Pls.' Decl.") 5-30).[2]  At most, however, the logs support a conclusion that Plaintiffs detected fumes; they say nothing about whether those fumes were harmful.  By contrast, Defendants have introduced evidence of the fact that the Westchester County Bureau of Environmental Quality regularly monitored and inspected the asphalt plant during the time period relevant to this case, finding that the plant's emissions control equipment was operating satisfactorily and in compliance with all governmental regulations.  (Decl. of Neil Shevlin (Docket No. 122) ("Shevlin Decl."), Ex. E).  Moreover, as Defendants note, if the asphalt plant was emitting toxins into the air, it stands to reason that other inmates, staff members, and nearby residents would also have become sick.  (Mem. L. Supp. Defs.' Mot. Summ. J. (Docket No. 115) ("Defs.' Mem."), 14 (citing Defs.' Rule 56.1 Stmt. ¶¶ 18, 35)).  Yet there is no admissible evidence that that toxic fumes were in fact emitted.  (*See* Defs.' Mem. 2 (citing Defs.' Stmt. ¶ 8.)).

---

[2]     In an attempt to buttress their allegations, Plaintiffs also rely on conversations they claim to have had with several other inmates and guards, including one who allegedly closed a nearby school for a day due to the fumes and another who visited the plant to express concerns about the fumes. (Pls.' Mem. 3-6, 27-29).  As Defendants correctly point out, however, those conversations are nothing more than hearsay.  (Reply Mem. L. Supp. Defs.' Mot. Summ. J. (Docket No. 127) 3).  It is well settled that "only admissible evidence need be considered by the trial court ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  Absent the impermissible hearsay, Plaintiffs have only their own bare allegations to support the proposition that the plant emitted fumes, much less harmful ones.

Second, even assuming *arguendo* that the asphalt plant did release toxins, Plaintiffs have not adduced evidence that those toxins harmed their health, let alone sufficiently to satisfy the objective requirement of the deliberate-indifference test.  Bowe claims that her acid reflux, allergies, and headaches were all aggravated by exposure to the fumes.  (Pls.' Mem. 9-12).  Yet she readily admits that all of those conditions predated her arrival at Taconic.  (*Id.*). Furthermore, that concession is consistent with the medical evidence submitted by Defendants, which shows that Bowe's symptoms predated her arrival at Taconic, that her medications were adjusted as her complaints changed, and that, overall, her condition did not worsen at Taconic. (Decl. of Dr. Denise Sepe (Docket No. 118) ("Sepe Decl."), 2-7).  Similarly, Mabry asserts that her many medical conditions, from breathing problems and headaches to acid reflux and vomiting, all worsened upon her transfer to Taconic.  (Pls.' Mem. 12-17).  But she too concedes that the Taconic staff provided her with medical care for these ailments.  (*Id.*).  And the medical records indicate that Mabry's condition did not worsen appreciably at Taconic.  (*See* Sepe Decl. 7-15).  In any event, to the extent that either Plaintiff's medical condition did worsen upon transfer to Taconic, there is absolutely no evidence that the deterioration was *caused* by exposure to the fumes, toxic or otherwise.  Plaintiffs' conclusory assertions of causation are plainly insufficient.  *See, e.g.*, *Barnes v. Anderson*, 202 F.3d 150, 158-60 (2d Cir. 1999) (noting that Section 1983 plaintiffs must proffer expert medical evidence when a "complex injury" is at issue).

Finally, there is no admissible evidence to support Plaintiffs' claim that Defendants were "deliberately indifferent" to the existence of harmful toxins, as required by the subjective requirement of the Eighth Amendment inquiry.  Andrea Hester, for example, denied Plaintiffs' grievances relating to the alleged fumes only after conducting an investigation into the claims

and finding them to be without merit.  Among other things, she was advised by the maintenance supervisor that the asphalt plant was regulated by local, state, and federal agencies and was not emitting toxic fumes.  (Shevlin Decl., Ex. 25, ("Flood Decl.") ¶ 5); Decl. of Andrea B. Hester (Docket No. 119) ("Hester Decl.") ¶¶ 10-11).  Further, Hester had worked at Taconic since 1990, and was unaware of anyone — herself included — getting sick from fumes.  (Hester Decl. ¶ 6).  Similarly, Doctor Barbara Griffith had worked at Taconic since 1990 and was not aware of a single inmate who had been sickened by the asphalt plant.  (Decl. of Barbara Griffith (Docket No. 120) ¶¶ 3, 11).  She testified — reasonably — that if the plant had been emitting toxic fumes into the air that everyone in the area surrounding the plant, including inmates, staff, and civilians, would have been sickened, and that had not happened.  (*Id.* ¶ 6).  Given this record, no reasonable jury could find that Defendants knew of, and deliberately disregarded, an excessive risk to inmate health or safety.  *Cf. Santos v. Conn. Dept. of Corrections*, No. 3:04 Civ. 1562 (JCH) (HBF), 2005 WL 2123543, at *5 (D. Conn. Aug. 29, 2005) ("A correctional official . . . who is not a physician or nurse, is entitled to defer to the opinions of trained personnel in the context of medical issues.").

Plaintiffs' remaining claims — about vermin, mold in the showers, blood on the toilet seats, and exposure to second-hand smoke — also fall short.  First, there is little or no evidence (beyond Mabry's testimony) of vermin, let alone vermin in significant numbers, and Mabry herself acknowledged that Taconic personnel took steps to address her complaints.  (*See* Shevlin Decl., Ex. O ("Mabry Depo."), 113-16).  *See, e.g.*, *Benjamin v. Fraser*, 161 F. Supp. 2d 151, 173-74 (S.D.N.Y. 2001) (noting that "[t]he mere presence of vermin in a detainee's housing area does not constitute a denial of 'the minimal civilized measure of life's necessities'" and discussing that a vermin and pest management plan alleviates concerns about unsanitary

conditions) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1991)), *aff'd in part, vacated in part*, 343 F.3d 35 (2d Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009)).  Second, there is no evidence — beyond Mabry's lay opinion — that there was mold in the shower, and again, Taconic personnel took steps to address Mabry's complaints. (Hester Decl. ¶ 19; Flood Decl. ¶ 12).  Third, Mabry alleges that she saw blood on the toilets only six times during a single summer and acknowledges that officers responded to her complaints by making announcements that inmates should clean up after themselves.  (Mabry Depo. 117-19).  Finally, Mabry herself acknowledged that officers failed to enforce the policy against indoor smoking only infrequently, that officers attempted to address the issue after she complained, and that her health has not been adversely affected by exposure to any second-hand smoke.  (*Id.* at 134-47; *see also* Defs.' Mem. 17-18).  This evidence — even taken together (and even taken together with the evidence concerning fumes from the nearby asphalt plant) — is insufficient to establish a triable fact as to either prong of the Eighth Amendment test.

## CONCLUSION

The Court has carefully considered all of Plaintiffs' evidence and arguments, and finds them without merit.  Accordingly, Defendants' motion for summary judgment is GRANTED, and all remaining claims against Hester and Griffith are DISMISSED.

The Clerk of Court is directed to mail a copy of this Memorandum Opinion and Order to Plaintiffs, to terminate Docket No. 114, and to close this case.

SO ORDERED.

Dated: May 8, 2014
       New York, New York

_____
JESSE M. FURMAN
United States District Judge